# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEONARD HUDSON, | ) | C.A. No. 12-12 Erie |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Chief Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| MRS. KENNEDY, et al., | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

It is respectfully recommended that Defendants' motion to dismiss or, in the alternative, motion for summary judgment [ECF No. 42], be granted in part and denied in part.

## II.    REPORT

### A.    Relevant Procedural and Factual History

On January 24, 2012, Plaintiff Leonard Hudson ("Hudson") and four other inmates who were then incarcerated at the Federal Correctional Institution at McKean in Bradford, Pennsylvania ("FCI-McKean")[1], filed this *pro se* civil rights action pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), against the following Defendants, all of whom were then employed as staff members at FCI-McKean:  Mrs. Kennedy, Food Service Administrator ("Kennedy"); Mr. Stauffer, former Assistant Food Service Administrator and Corrections Officer ("Stauffer"); Mr. Baldensperger, Trust/Deposit Manager and Warehouse Manager ("Baldensperger"); and Food Service Cook Supervisors Mrs. Angell ("Angell"), Mr. Brown ("Brown"), Mr. Case ("Case"), Mr. Franklin ("Franklin"), Mr. Ireland

---

[1] Plaintiff is currently housed at Toler House RRC in Newark, New Jersey.

("Ireland"), Mr. Martinelli ("Martinelli"), Mr. Orzechowski ("Orzechowski"), Mr. Santana ("Santana"), Mr. Saporito ("Saporito"), Mr. Sharro ("Sharro"), Mr. Sisk ("Sisk"), and Mr. Zekas ("Zekas"). The other four inmates originally named as Plaintiffs in this matter, Wiley McCloud ("McCloud"), Fausto Parra-Colon ("Parra-Colon"), Tommy Banks ("Banks"), and Andre Pierre, were previously terminated from this case for their failure to take action to prosecute their claims. (*See* ECF Nos. 14, 45). As a result, Hudson is the sole remaining Plaintiff in this case.

Plaintiff claims that Defendants were deliberately indifferent to his health in violation of his Eighth Amendment rights by knowingly serving insect-infested food to him and all other inmates at FCI-McKean on a daily basis. Plaintiff also appears to be asserting an Eighth Amendment failure to protect claim, alleging that "[w]hen the general population finds out that these inmate cooks have not only had knowledge of the insects in the food but aided and assisted the staff, defendants, in this unconstitutional act, physical violence will ensue. Thus risking injury to both inmates and staff." [ECF No. 11 at p. 3, ¶ 3).

Defendants have filed a motion to dismiss or, in the alternative, motion for summary judgment, arguing that Plaintiff's claims do not rise to the level of Eighth Amendment violations. Alternatively, Defendants argue that (i) Defendants Angell, Baldensperger, Kennedy, and Sisk should be dismissed from this action because Plaintiff has failed to assert any allegations against them; (ii) the Court lacks subject matter jurisdiction over Plaintiff's claims against Defendants ion their official capacities; (iii) Plaintiff's alleged fear of harm from other inmates does not rise to the level of a failure to protect claim; and (iv) Defendants are entitled to qualified immunity. [ECF No. 42]. Despite being given ample time to do so, Plaintiff has failed to file a response to Defendants' motion. This matter is now ripe for consideration.

**B.**     **Factual Evidence of Record**

In support of his claims, Plaintiff has submitted his own affidavit, as well as affidavits from three of the other original inmate Plaintiffs: McCloud, Parra-Colon, and Banks. [ECF No. 1-1].

According to his affidavit, Plaintiff worked in the warehouse section of FCI-McKean's Food Service Department from August through September 2010. (ECF No. 1-1 at p. 1). One day during that time period, Plaintiff was unloading a truck when he noticed "bugs crawling around on bags of incoming foods," consisting of "mostly 50lb bags of cornmeal, pancake mix, farina and other dry goods." (Id.). Plaintiff notified Defendant Orzechowski, who said he would inform his supervisor about the insects. (Id.). Soon, Defendant Stauffer appeared and instructed Plaintiff and his co-worker to "wipe the insects off, throw any of the bags that were open in the trash and stock the rest with the current inventory of food." (Id.). Sometime later, Plaintiff was removed from his warehouse job and was given the A.M. cook position. (Id.). After a few days, Plaintiff noticed insects in the oatmeal, farina, grits, and rice being prepared and served to the inmates. (Id.).

During the months he worked as the A.M. cook, Plaintiff declares that he "personally mentioned and physically showed" the insects in the prepared food to Defendants Sharro, Saporito, and Santana. (Id.). Plaintiff notes that the inmate cooks' common practice was to boil the rice in water until the insects floated to the top and then, in the presence of food service staff, scoop out as many insects as possible. (Id.). In the case of oatmeal, grits, and other hot cereals, however, the insects were simply cooked into the food. (Id.). Plaintiff declares that Defendant

Franklin knew that there were insects in the food and informed Plaintiff that Defendant Kennedy was also aware of the problem. (Id.). Finally, on March 1, 2011, while preparing to cook rice for the lunch meal, Plaintiff noticed that "the amount of bugs in the rice was disturbing" and notified Defendant Franklin, who allegedly replied, "if it gets any worse, we'll dump that and get some more." (Id.). This incident was confirmed by Banks in his affidavit. (Id. at p. 5).

McCloud declares in his affidavit that he worked in FCI-McKean's Food Service warehouse from December 2010 to early February 2011, during which time he found insects "inside the cereal, cake mix and oatmeal bags and boxes." (Id. at p. 2). McCloud states that he reported the "bug problem" to the warehouse foreman, Defendant Saporito, who then reported the problem to Defendant Kennedy. (Id.). McCloud also confirms that, during his time in FCI-McKean's Special Housing Unit ("SHU"), he was fed oatmeal and grits containing "grain bugs" on numerous occasions, but did not receive any replacement food after reporting it. (Id.).

As of the date of his affidavit, April 2, 2011, Parra-Colon had been working as a cook in FCI-McKean's Food Service Department since June 2009. (Id. at p. 3). Parra-Colon states that he began noticing the presence of bugs in the food approximately one year prior to the date of his affidavit, when "the bugs started showing up in the food right out of the warehouse." (Id.). He reported the problem to Defendant Case, who showed the bugs found in the rice to Defendant Stauffer. (Id.). After the first incident, Parra-Colon declares that he and the other inmate cooks were instructed by their supervisors to skim the bugs off the top of the water when cooking rice. (Id.). He then began to notice bugs in "egg noodles, pastas, flour, and other dry products." (Id.). After a while, Parra-Colon notes it became "the regular routine to prepare foods with bugs in it

4

and serve it to the inmate population." (Id.). Parra-Colon specifically names Defendants Case, Stauffer, Martinelli, Ireland, Brown, Sidon, Orzechowski, and Zekas, as having knowledge that bug-infested food was being prepared and served to the inmate population. (Id.).

In support of their motion to dismiss or, in the alternative, motion for summary judgment, Defendants have submitted the Declarations of Defendant Kennedy and Daniel Boyer, Safety Specialist at FCI-McKean ("Boyer"). (ECF Nos. 43-6 and 43-11, respectively). Defendant Kennedy has been FCI-McKean's Food Service Administrator since June 2010, and has overall responsibility for all Food Service functions. (ECF No. 43-6 at ¶¶ 1-2). Kennedy declares that "[a]t some point before April 2011, [she] was advised by one of the Cook Supervisors that insects were found after rice was placed into a kettle filled with water." (Id.). Kennedy states that she instructed the Cook Supervisor to discard all of the rice and to substitute baked potatoes. She also contacted the Safety Department to have the affected area treated and to have the food storage warehouse inspected. (Id. at ¶ 9). As a result of the inspection, Kennedy declares that "FCI McKean disposed of over $6,500.00 worth of food in April 2011 due to infestation or potential infestation by insects, including 500 pounds of rice, 1550 pounds of pancake mix, and 1480 pounds of egg noodles." (Id. at ¶ 10). In addition, Kennedy notes that FCI-McKean contracted with Orkin Pest Control in April 2011to provide pest control management services on a monthly basis. (Id. at ¶ 11).

Boyer declares that he has been the full-time Safety Specialist at FCI-McKean since January 2012. (ECF No. 43-11 at ¶ 1). Boyer acknowledges that FCI-McKean's Food Service Department had documented complaints of flies on November 8, 2010, and December 14, 2010,

and complaints of bugs in the Food Service warehouse on January 3, 2011, and April 8, 2011. (Id. at ¶ 4). The records attached to Boyer's Declaration further reflect that there were complaints of bugs in the Food Service warehouse on March 3, 2011. (ECF No. 43-12 at p. 4).

### C.    Standards of Review

#### 1.    Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true.  Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)).  See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S.  265, 286 (1986).  "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  Although the United States Supreme Court does "not require heightened fact

6

pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

Recently, the Third Circuit Court prescribed the following three-step approach to determine the sufficiency of a complaint under Twombly and Iqbal:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011), citing Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S.Ct. at 1947, 1950); see also Great Western Mining & Min. Co. v. Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010).

## 2.    Summary Judgment

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56(c). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare

assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

### 3. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read

'with a measure of tolerance'"); <u>Freeman v. Department of Corrections</u>, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. <u>Gibbs v. Roman</u>, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds). <u>See, e.g.</u>, <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); <u>Markowitz v. Northeast Land Company</u>, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### C. Discussion

#### 1. Eighth Amendment Deliberate Indifference to Health Claim

##### a. Merits

Plaintiff claims that Defendants "knowingly and willingly, actively participated in preparing and serving foods with insects in them to [Plaintiff] and the entire population and staff of [FCI-McKean]" on a daily basis "for at least six months to a year." (ECF No. 11, Complaint, at pp. 2-3, Section IV.1). As a result, Plaintiff alleges that Defendants put his health "into serious jeopardy." (<u>Id</u>., Section IV.2).

To succeed on an Eighth Amendment claim based on prison conditions, a plaintiff must show "he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). An objectively, sufficiently serious injury is one that denies the inmate "the minimal civilized measure of life's necessities," such as food, water, shelter. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981); <u>see also</u> <u>Tillman v. Lebanon County Correctional Facility</u>, 221 F.3d 410, 419 (3d

Cir. 2000); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992) (holding that, at a minimum, correctional institutions must provide inmates with "adequate food, clothing, shelter, sanitation, medical care, and personal safety"); Moncrieffe v. Witbeck, 2000 WL 949457 at *6 (N.D.N.Y. June 29, 2000), citing Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983) ("depriving an inmate of food or serving him contaminated food may constitute a violation of the Eighth Amendment"). Furthermore, to establish deliberate indifference: 1) a prison official must know of and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the inference. Farmer, 511 U.S. at 837.

At a minimum, the Eighth Amendment requires that prison officials serve "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir. 1980). Here, Plaintiff asserts that his meals were prepared and served in a manner that jeopardized his health because they contained dry ingredients that were insect-infested.

Defendants first argue that this claim should be dismissed because, "[r]ather than a continuous or consistent insect problem, [Plaintiff] only [makes] specific allegations [that] are episodic or occasional in nature," which fail to amount to a constitutional deprivation. (ECF No. 43, Defendants' Brief, at p. 9 (citations omitted)). This argument misses the mark, as it poorly misconstrues the plain allegations of the complaint and supporting affidavits. Plaintiff clearly alleges that he and all other FCI-McKean inmates were forced "to eat insects daily for at least six

months to a year," and "[s]ometimes the inmates had eaten insects in their food in all three of the daily meals provided by the Food Service Department." (ECF No. 11, Complaint, at Section IV.1). The affidavit of Parra-Colon further confirms that the presence of bugs in the food became a "steady problem," and that it became "the regular routine to prepare food with bugs in it and serve it to the inmate population." (ECF No. 1-1 at p. 3). Thus, Plaintiff's allegations are more akin to those raised and upheld in <u>Summers v Sheahan</u>, 883 F.Supp. 1163 (N.D.Ill. 1995) (upholding allegations of frequent service of "vermin infested" food to inmates) and <u>Kettering v Chaves</u>, 2008 WL 4877005 at *10 (D.Colo. Nov. 12, 2008) (upholding allegations of frequent service of "rancid and worm-infested food" to inmates).

Second, Defendants argue that, even if Plaintiff can show a continuous or consistent insect problem or infestation, he has failed to allege that he actually consumed, or was actually harmed by consuming, "contaminated" meals, or that the meals presented an immediate danger to his health and well-being. (ECF No. 43, Defendants' Brief, at p. 10). Although the Court agrees that Plaintiff does not plainly allege that he consumed or was harmed by consuming contaminated food, he does allege that Defendants' acts of regularly serving insect-infected food to him and the other originally-named plaintiff inmates put their health in "serious jeopardy." He also makes reference to "[t]he continual act of feeding insects to the plaintiffs" and expresses concern over the "long term effect of eating these insects on a daily basis," thus strongly implying that he did, in fact, consume the insect-infested food. (ECF No. 11, Complaint, at Section IV.2). Given the undeveloped record in this case and Plaintiff's status as a *pro se* litigant, the Court finds these allegations minimally sufficient to meet the objective prong of Plaintiff's

Eighth Amendment claim at this early stage of the proceeding.

Finally, Defendants argue that, even if Plaintiff can meet the objective prong of his Eighth Amendment claim, he cannot show that Defendants were deliberately indifferent to his health or welfare. In this regard, Defendants note that the complaint and supporting affidavits acknowledge that Defendants "took steps to alleviate the risk posed by insects in the food in response to Plaintiff's or another inmate's concerns." (ECF No. 43, Defendants' Brief, at p. 11). In particular, Defendants highlight the following excerpts from Plaintiff's affidavit: (i) one day in August or September 2010, Defendant Stauffer discarded "contaminated" food from the warehouse before it could be used in inmates' meals; (ii) in February 2011, a Cook Supervisor, Mr. Sidon, removed insect-infested dry cereal from the breakfast menu and substituted grits in response to an inmate cook's concerns; and (iii) Defendant Franklin allegedly told Plaintiff that rice in which insects appeared would be replaced if the insect problem worsened. (ECF No. 1-1, p. 1).

What Defendants fail to point out, however, is that: (i) before disposing of the "contaminated" food in August or September 2010, Defendant Stauffer allegedly mentioned that he had to throw away a lot of rice in the past due to the same insect problem, and then instructed Plaintiff and other inmates to simply brush the insects off the bags of food, throw away the open bags, and stock the rest with the food inventory; (ii) the grits Mr. Sidon used to replace the contaminated dry cereal also contained insects, yet were cooked and served to the inmates nonetheless; and (iii) Defendant Franklin's statement that he would replace the rice if the insect problem worsened was allegedly spoken after Plaintiff had notified him that the amount of bugs in the rice that day was particularly "disturbing." (Id.). Thus, when placed in their proper

13

context, the declarations highlighted by Defendants do little to dispel Plaintiff's claim of deliberate indifference and, in fact, do more to confirm Defendants' knowledge of the extent of the insect problem.

Defendants also argue that the food inspection in April 2011 that was conducted at Defendant Kennedy's request, which resulted in over $6,500.00 worth of food being disposed of due to insect infestation, points to a lack of deliberate indifference; however, this inspection came months after Plaintiff alleges he first began complaining about the presence of insects in the food. Moreover, the fact that the April 2011 inspection revealed such a large infestation of insects actually lends credence to Plaintiff's claim that insects were present in the food on more than an occasional basis.

For all of the foregoing reasons, Defendants' motion to dismiss Plaintiff's Eighth Amendment deliberate indifference to health claim should be denied, and such claim should be allowed to proceed pending a more fully developed record.


**b.**     **Qualified Immunity**

Alternatively, Defendants assert that even if Plaintiff has stated a constitutional injury, they are entitled to qualified immunity. (*See* ECF No. 43, Defendants' Brief, at pp. 16–18). Given that Plaintiff has minimally established a constitutional claim, qualified immunity is only justified if the constitutional right was not clearly established at the time of the alleged violation. Saucier v. Katz, 533 U.S. 194, 200-01 (2001). Contrary to Defendants' assertion, the law is clearly established that inmates are constitutionally entitled to edible food prepared under

sanitary conditions. *See* <u>Ramos</u>, 639 F.2d at 570–71. While Plaintiff may not ultimately be able to prove that Defendants violated clearly-established precedent regarding his specific food-related claims, he has minimally alleged (1) a constitutional violation (2) that Defendants deliberately disregarded, such that Plaintiff's Eighth Amendment deliberate indifference to health claim should survive this early stage of the proceedings.

## 2. Eighth Amendment Failure to Protect Claim

The Eighth Amendment's prohibition against the infliction of cruel and unusual punishment has been interpreted to impose upon prison officials a duty to take reasonable measures "to protect prisoners from violence at the hands of other prisoners." <u>Hamilton v. Leavy</u>, 117 F.3d 742, 746 (3d Cir. 1997), <u>quoting</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994).

To succeed on an Eighth Amendment claim alleging a failure to protect, a plaintiff must show that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists;" (3) the defendant actually drew that inference; and (4) the defendant deliberately disregarded the apparent risk. <u>Farmer</u>, 511 U.S. at 834-37. In determining whether a defendant was deliberately indifferent, the court must "focus [on] what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)." <u>Hamilton</u>, 117 F.3d at 747. "A prison official's knowledge of a substantial risk is a question of fact and can, of course, be proved by circumstantial evidence." <u>Id</u>. "In other words, it may be concluded that a prison official knew of a substantial risk from the very fact that the risk was obvious." <u>Jones v. Day</u>, 2007 WL 30195 at *4 (W.D.Pa. Jan. 4, 2007). For instance:

[I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,' and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

Farmer, 511 U.S. at 842-43 (citations omitted).

"Thus, in order to survive defendant's summary judgment motion, a plaintiff is obligated to produce sufficient evidence to support the inference that defendants 'knowingly and unreasonably disregarded an objectively intolerable risk of harm.'" Jones at * 4, quoting Beers-Capitol v. Whetzel, 256 F.3d 120, 132 (3d Cir. 2001). "It is not enough to assert that a defendant should have recognized the risk; the evidence must be sufficient to support the inference that 'the defendant must have recognized the excessive risk and ignored it.'" Jones at *4, quoting Beers-Capitol, 256 F.3d at 138. Nonetheless, "Farmer made clear that a prison official defendant cannot escape liability by showing that he did not know that *this* particular inmate was in danger of attack: 'it does not matter ... whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.'" Beers-Capitol, 256 F.3d at 131, quoting Farmer, 511 U.S. at 843.

Here, Plaintiff essentially alleges that Defendants knew, or should have known, that he, as an inmate cook, would be at serious risk of physical attack if, or when, the inmate population learned that he "aided and assisted" Defendants in preparing and serving meals containing insects. (ECF No. 11, Complaint, at Section IV.3). Defendants argue that such allegations are insufficient to establish an Eighth Amendment violation. The Court agrees.

Initially, the Court notes that there are no allegations or supporting evidence of record indicating that the inmate population ever became aware of the presence of insects in their food, nor is

there any indication that Plaintiff was subjected to threats of bodily harm. Thus, Plaintiff's claim in this regard is speculative at best. Moreover, the fear of assault has been held to be insufficient to state a cognizable Eighth Amendment failure to protect claim. See, e.g., Smith v. Pennsylvania Dep't of Corr., 2011 WL 4573364, at *8 (W.D.Pa. Sept. 30, 2011), citing Brown v. Ellis, 175 F.3d 1019 (7th Cir. 1999)(holding that failure to protect from actual physical injury, not failure to protect from the fear of injury, is what violates the Eighth Amendment); Babcock v. White, 102 F.3d 267, 272 (7th Cir. 1996)("[h]owever legitimate [plaintiff's] fears may have been, ... it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment").

Based on the foregoing, the Court finds that Plaintiff has failed to set forth a viable Eighth Amendment failure to protect claim, and such claim should be dismissed accordingly.


### 3.    Personal Involvement

Defendants contend that Defendants Angell, Baldensperger, Sisk, and Kennedy should be dismissed from this case in any event because Plaintiff has failed to allege that any of said Defendants played an affirmative part in the complained-of misconduct.

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir. 1988). Section 1983

liability cannot be predicated solely on *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations). If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. Rode, 845 F.2d at 1208; Cooper v. Beard, 2006 WL 3208783 at * 14 (E.D.Pa. Nov. 2, 2006).

Here, Plaintiff has failed to make any allegations whatsoever against Defendants Angell, Baldensperger, and Sisk. Because liability cannot attach against these Defendants based solely upon their supervisory roles, they should be dismissed from this case. The same conclusion cannot be reached, however, with regard to Defendant Kennedy.

Defendants argue that Defendant Kennedy's alleged involvement is based solely on "supposition and impermissible hearsay" because the most Plaintiff and McCloud could say in their affidavits is that Defendant Kennedy was informed of the insect problem by their immediate supervisors. (ECF No. 43, Defendants' Brief, at p. 14; ECF No. 1-1 at pp. 1-2). By Defendant Kennedy's own admission, however, either she or her Assistant Food Service Administrator regularly performed safety and sanitation checks of the Food Service Department, both on an informal, daily basis, and on a formal, weekly basis. (ECF No. 43-6, Defendant Kennedy's Declaration, at ¶ 6). In addition, monthly inspections of the Food Service Department were conducted by the Safety Department, reports of which were provided to Defendant Kennedy.

(Id.). The Safety and Sanitation Inspection Reports attached to Boyer's Declaration confirm the presence of flies and insects in the Food Service warehouse between the dates of November 2010 and April 2011, which corresponds to the time period alleged in the complaint. (ECF No. 43-11, Boyer's Declaration, at ¶ 4). It is at least arguable, therefore, that Defendant Kennedy was aware of the presence of insects in the Food Service Department during the timeframe in which Plaintiff and the other inmates were lodging their complaints about insects being present in the food. This arguable knowledge, coupled with Plaintiff's and McCloud's declarations that Defendant Kennedy was informed of their complaints by their respective Cook Supervisors, is minimally sufficient to establish that Defendant Kennedy played an affirmative part in allowing the insect problem to persist until April 2011, when aggressive action to dispose of the contaminated food and to retain a pest control service first occurred. Thus, Defendants' motion to dismiss Defendant Kennedy from this action due to her lack of personal involvement should be denied at this early stage of the proceeding.

### 4. Sovereign Immunity

Finally, Defendants' argue that Plaintiff's claims against them in their official capacities should be dismissed based on the doctrine of sovereign immunity. This Court agrees.

An action brought against federal agencies, or federal employees in their official capacities, is effectively an action against the United States. Kentucky v. Graham, 473 U.S. 159, 165–66 (1985). It is well settled that the United States has sovereign immunity except where it consents to be sued. United States v. Mitchell, 445 U.S. 535, 538 (1980). Sovereign immunity extends to government agencies and employees sued in their official capacities. Antol v. Perry,

82 F.3d 1291, 1296 (3d Cir.1996). In addition, a waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." <u>Mitchell</u>, 445 U.S. at 538.

Sovereign immunity is jurisdictional in nature. Indeed, the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.' " <u>FDIC v Meyer,</u> 510 U.S. 471, 475 (1994). Thus, because the United States has not waived its sovereign immunity for Plaintiff's claims against its federal employees in their official capacities, such official capacity claims against the Defendants should be dismissed for lack of subject matter jurisdiction.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss, or in the alternative, motion for summary judgment [ECF No. 42] be granted in part and denied in part, as follows:

1.     Defendants' motion should be granted with regard to Plaintiff's Eighth Amendment failure to protect claim, and such claim should be dismissed;

2.     Defendants' motion should be granted with regard to Plaintiff's official capacity claims against Defendants, and such claims should be dismissed for lack of subject matter jurisdiction;

3.     Defendants' motion to dismiss Defendants Angell, Baldensperger, and Sisk for lack of personal involvement should be granted, and said Defendants should be terminated from this case; and

4.     Defendants' motion should be denied in all other respects.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P.

72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file objections will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F. 3d 187, 193 n. 7 (3d Cir. 2011).


<u>/s/ Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: July <u>26</u>, 2013

cc:    The Honorable Sean J. McLaughlin
       Chief United States District Judge